CITY OF NEW YORK, The (BAKER v.). See Case No. 765.

———

## Case No. 2,760.

### The CITY OF NORWICH.

[3 Ben. 575.][1]

District Court, E. D. New York.　Dec., 1869.

COMMON CARRIER—LOSS BY COLLISION—FIRE—
BILL OF LADING.

1. A steamer and a schooner collided on Long Island Sound, in the night. The steamer was bound from New York to New Haven, and the schooner was closehauled, on a course nearly at right angles with the steamer's course, and kept that course unchanged. The steamer also kept her course unchanged, until close upon the schooner, which she did not see, as she claimed, until it was too late to avoid her. The schooner struck the steamer on her starboard side, making a large hole in her, into which the water rushed. When it reached the lower furnaces, flames burst out, and soon enveloped the boat. As the fire burnt off her upper works, and as she filled, she slowly sank, rolling over as she filled. Libels were filed against her, by several owners of the cargo on board. Some of the cargo was shipped on simple receipts, and some on bills of lading containing the following clause: "Dangers of the seas, fire, water, breakage, leakage, and all other accidents excepted—the risk of all which, it is stipulated, shall be borne by the owner." *Held*, that, if the schooner was not seen, as claimed by the steamer, until it was too late to allow of any change of her course, there was negligence on the part of those in charge of the steamer, in not seeing her sooner.

2. The restriction in the bills of lading could not relieve the vessel from loss occasioned by such negligence.

[Cited in The Montana, 17 Fed. 379.]

3. The fire must be considered as an incident of the collision. If it were true, as claimed, that, but for the fire, the vessel would not have

sunk, and could have been towed in, such a consideration would not have the effect to screen the carrier, whatever might have been its weight in a question between insurers and insured; moreover, it was not proved that these particular goods were burned, or sunk in the boat.

4. There was no defence, under the act of March 3, 1851 [9 Stat. 635]. The vessel was liable, therefore, to all the libellants.

[Cited in Re Norwich & N. Y. Transp. Co., Case No. 10,362.]

BENEDICT, District Judge. These actions (fourteen in all) were separate proceedings in rem, instituted against the steamboat City of Norwich, by various shippers of cargo, to recover the value of certain goods, which were received on board the steamer, for transportation to New York, but were never delivered. After the seizure of the vessel, under processes issued upon several of the libels, it being made to appear that the claims likely to be brought against her, arising out of the same disaster, would exceed her value, she was bonded in her full value, the stipulation to be for the benefit of all parties who might come into this court and file libels against her, for damages caused by the same disaster.[2] After the discharge of the vessel under such a stipulation, one or two other libellants commenced proceedings in this court, and were, on motion, declared to be entitled to the benefit of the stipulation given for the vessel, and all the cases have been heard together upon their respective pleadings and proofs, and are now to be disposed of.

The various actions may be divided into two classes—one, where the goods sued for were shipped under a bare receipt, without any limitation of liability on the part of the carrier; the other, where there was a bill of lading containing the following clause: "Dangers of the seas, fire, water, breakage, leakage and all other accidents excepted—the risk of all which it is stipulated shall be borne by the owner." In other respects all the cases are alike.

The proofs showed the loss of the goods to have occurred as follows:—

The steamer, while proceeding from New Haven to New York in the night, and when in the Sound, some seven or eight miles north easterly of Eaton's Neck, came in collision with the schooner General Van Vliet, which was sailing close hauled, on a course nearly at right angles with that of the steamer. The steamer was seen from the schooner at some distance, and the course of the schooner was held unchanged. The steamer also held her course unchanged, until close upon the schooner, when it was too late to alter her course or materially check her speed, and the vessels came in violent contact, at nearly right angles with each other. The steamer received the blow on her larboard side, about sixty feet abaft the stem, where her hull was

———

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

[2] For this stipulation, and the decision under which it was given, see 1 Ben. 89 [Place v. City of Norwich, Case No. 11,202].

stove by the schooner's bow, a large hole being made, through which the water at once poured in large volume. In a very few moments after the blow, the water in the steamer reached the lower furnaces, and at once flames burst out, which shortly enveloped the boat. As the fire burned off her upper works, and as she filled, the steamer sank slowly, rolling over as she filled, and finally resting at the bottom, upside down. Much evidence was introduced on both sides tending to show the cause of the collision, which I have carefully considered, and as to which I deem it sufficient to say, that, if it be true, as claimed by the steamer, that the schooner was not seen from the steamer, until the vessels were too close together to admit of any change of course on the part of the steamer, there was, in my opinion, negligence, on the part of those in charge of the steamer, in not seeing the schooner as soon as they might have done, and in time to have avoided her.

The collision which is claimed to have caused the loss of the goods being thus found to have arisen from the negligence of the carrier, it follows that the libellants are entitled to recover, as well those having bills of lading as those having simple receipts, for it must be considered to have been settled that, while a carrier may restrict his liability by contract, such restrictions as appear in these bills of lading do not relieve from losses caused by the negligent navigation of his master and crew. 1 Pars. Mar. Law, p. 171–191.

But it is said that the goods in question were lost by the fire, and not by the collision, and that the fire was accidental, and not the result of negligence. My opinion, however, is, that the fire must be considered to have been simply an incident of the collision, a natural result, almost sure to follow such a blow inflicted in certain places upon such a vessel as this steamer—a result which, in this instance, did follow the blow almost immediately and directly—and, as between the shippers and the ship, in law, a result of the negligence which brought the steamer in contact with the schooner.

Indeed, the answer in the fourth article describes the fire as caused by the collision, and supposes it to be properly chargeable to the bad navigation of those on board the schooner.

I have not overlooked the argument which has been drawn from a line of proof, tending to show, from the specific gravity of the steamer, that, in the absence of the fire, the vessel would not have sunk below her promenade deck, and could then have been towed ashore, and her cargo saved; and, were this an action upon a policy of insurance against fire, it might be held, upon such proof, that, as between the insurers and insured, the sinking of the vessel was caused by fire; for fire, which was insured against, was one cause of the loss. But here the actions are against the carrier, who undertook to carry with care, and is shown guilty of a negligence which set in motion a train of circumstances, not necessarily indeed, but naturally, leading to the loss which occurred. The distinction between such actions and actions upon policies of insurance will be found stated in Grill v. General Iron Screw Collier Co., L. R. 1 C. P. 600.

And besides, the burden of proof being upon the carrier, it is not here shown that the particular goods sued for were burned by the fire or sunk in the boat. The evidence shows that some of the cargo was burned, and some sunk in the boat, and that some floated off, and was either picked up or lost in the water. But there is no evidence disclosing what became of these particular goods. All that is shown in regard to them is, that they were received by the carrier and never delivered, and that all the cargo was involved in the disaster of the 17th of April.

The proofs, therefore, fail to make out a foundation for the argument derived from the effect of the fire upon the specific gravity of the steamer and cargo.

These views dispose of the argument, which was based upon the act of March 3, 1851. Assuming that this steamer was not excluded from the effect of the act by the seventh section—a question which has not been raised upon this argument—and assuming, also, that the act, although confined, in terms, to the owners, can be construed as applying also to the vessel—neither of which questions I here decide—it appears to be clear, that the first section of the act can have no application in a case where fire is but an incident of a collision. Losses by collision are provided for in a subsequent section, where, by the terms of the statute, the owners are made liable for such losses, to the extent of their interest in the vessel.

My conclusion, accordingly, is, that these respective libellants are entitled to recover, of this steamer, the amount of the damages by them sustained by reason of the non-delivery of their goods. A decree will be, accordingly, entered, with orders of reference to ascertain and report the amount of such damages.

[NOTE. For a history of the subsequent proceedings in this case, see Case No. 2,762, and note.]